THE STATE OF MISSOURI, Respondent, v. CHARLES BUCK, Appellant.

St. Louis Court of Appeals, January 27, 1891.

1. **Criminal Law: INFORMATIONS.** A criminal information before a justice of the peace must be based upon the personal knowledge either of the prosecuting attorney or of an informer. When it is made by the prosecuting attorney of his own knowledge, it need not be verified; yet if an information, after being so made, is verified by the prosecuting attorney, "according to the best of his knowledge and belief," the verification will not invalidate it.

2. ———: ———: **SLANDER.** An information for criminal slander in the defamation of a female shows inferentially that the female alleged to have been slandered was unmarried, if the prefix "Miss" is used in the mention of her name.

3. ———: ———: ———. An information for such criminal slander charged the defendant with having uttered specified words concerning a female, amounting to an allegation that she was pregnant, and further stated that the words were spoken with intent to charge her with incest, fornication, adultery and whoredom. *Held* that, though the words were spoken of a married woman, the indictment was sufficient, in that the intent thus alleged was inconsistent with the idea that the pregnancy was the result of the marriage.

4. ———: ———: ———. *Held* that such indictment was not bad on the ground that the slanderous words were charged to have been uttered with the intent to impute different offenses, namely incest, fornication, adultery and whoredom.

*Appeal from the Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*Ball & Ball*, for appellant.

(1) The information is bad because it is not based upon the personal knowledge of the prosecuting attorney, and the information is not based upon the affidavit

of any person having personal knowledge of the alleged offense. *State v. Wilkson*, 36 Mo. App. 373, and cases cited. ( 2 ) The information is drawn under section 1590, Revised Statutes, 1879, and must set out the language used, and show upon its face whether the words were spoken of a single or married female ; this the information does not show, and is therefore bad. It is. not sufficient to follow the language of the statute in this case. *State v. James*, 37 Mo. App. 214, and cases cited ; *State v. Hayward*, 83 Mo. 299, and cases cited. ( 3 ) The offense attempted to have been charged is not sufficient. The information does not show whether the defendant charged the female with whoredom, adultery, incest or fornication, and, from the reading of the information, defendant is unable to tell what he is charged with. *State v. Hayward*, *supra*. ( 4 ) An information for a criminal offense must show on its face that an offense has been committed. · In this case the information does not allege any crime unde the law. *State v. Marshall*, 47 Mo. 378.

*Sol. Hughlett*, Prosecuting Attorney, for respondent.

( 1 ) This information clearly comes within the purview of the cases cited by counsel for defendant. *State v. Wilkson*, 36 Mo. App. 373 ; *State v. James*, 37 Mo. App. 214. The law is clearly settled in *State v. Hayward*, 83 Mo. 299, cited. ( 2 ) The information was drawn under Revised Statutes, 1879, section 1590, which is the same as Revised Statutes, 1889, section 3868, and clearly follows the language of the statute. 20 Mo. App. 552.

THOMPSON, J.—This was a criminal information commenced before a justice of the peace, under section 1590 of the Revised Statutes, 1879 ( R. S. 1889, sec. 3868 ), for speaking concerning a certain female certain false and slanderous words. The case was appealed to the circuit court, where the defendant was convicted,

the jury assessing his punishment at nine months' imprisonment in the county jail.

The information was as follows :

"State of Missouri,     Before Walter McQuie, Justice
                    of the Peace, Upper Loutre
        v.            township, Montgomery county,
"Charles Buck.     Missouri.

"Sol. Hughlett, prosecuting attorney for and within the county of Montgomery, in the state of Missouri, of his own knowledge, informs the court that one Charles Buck, on or about the twenty-ninth day of May, A. D. 1889, at the said county of Montgomery, did then and there falsely and maliciously charge and accuse Miss Linnie Evans, a female, of incest, fornication, adultery and whoredom, by falsely speaking of and concerning such female, Miss Linnie Evans, in the presence of Edward Morris, John Morris and Nathaniel Richards, and divers other good citizens and persons, the false and slanderous words, to-wit : 'She is in the family way, it shows itself ; there will be an increase in Mr. Evans' family. Linnie is in the family way ; I can and could see she was sticking out ;' meaning all the time to convey the impression and idea that Miss Linnie Evans was pregnant. They were spoken of and concerning Miss Linnie Evans, a female.

"Sol. Hughlett.

"Sol. Hughlett, prosecuting attorney, makes oath and says the facts stated in the foregoing information are true according to his best information and belief.

"Sol. Hughlett,
"County Attorney.

"Subscribed and sworn to before me this fourteenth day of June, A. D. 1889. My term of office expires March 25, 1890.

"Robert Shackleford,
"Notary Public in and for Montgomery County, Missouri.'

I.    The first error assigned is that this information does not purport to be based upon the personal knowledge of the prosecuting attorney, and that it is not supported by the affidavit of anyone having personal knowledge of the commission of the offense charged.    The rule in this state is, that a criminal information before a justice of the peace must be based upon the personal knowledge of some one, either of the prosecuting attorney or of an informer.    *State v. Hatfield*, 40 Mo. App. 358; *State v. Wilkson*, 36 Mo. App. 373; *State v. Humble*, 34 Mo. App. 343.    It is also a rule that, "where an information is made by the prosecuting attorney of his own knowledge, it is not necessary for him to add his affidavit to it, since it is made under the sanction of his official oath.    *State v. Wilkson*, *supra; State v. Parker*, 39 Mo. App. 116, 120.    In this case the information charges the offense as upon the knowledge of the prosecuting attorney, whilst the affidavit, which he has added to it, is sworn to "according to the best of his knowledge and belief."    The court are of opinion that, the affidavit being surplusage, and the information being sufficient without it, it is not to be read for the purpose of vitiating the information; or at most that, if it is to be read in connection with the information, it is to be read as charging the offense upon his knowledge *and* to the best of his information and belief.    I have much doubt on the question whether the natural interpretation of the whole instrument is not that the prosecuting attorney makes information on information and belief merely; but the judgment of the court is as above stated.

II.    The second assignment of error is that the information is bad, in that it does not state that the person of whom the words were spoken was a single woman.    The statute, under which the information was drawn, is as follows:    "Every person who shall falsely and maliciously charge or accuse any female of incest, fornication, adultery or whoredom, by falsely speaking

of and concerning such female, in the presence and hearing of any other person or persons, any false and slanderous words, which shall impute to her any such offense, * * * shall be deemed guilty of a misdemeanor." The argument is that the information does not state facts showing that the crime has been committed, because it is no crime to use the language charged with reference to a married woman. The statute, it is to be observed, does not in terms apply to unmarried women, and it is obvious that the offense denounced by it may be equally committed against a married woman. It is true that merely to say of a married woman, who has lived with her husband under circumstances which render access possible, that she is in the family way, is no offense under the statute, however gross the form of expression employed may be,—because such words, from the nature of the case, cannot be understood in that sense. But a married woman may be living apart from her husband under such circumstances as to preclude the possibility of access, in which case the words might be understood as intending to impute the offense of incest, fornication, adultery or whoredom. The information would undoubtedly have been clearer and better, if it had charged in direct language that Miss Linnie Evans was a single woman; but the employment of the word "Miss," which is commonly used to designate a woman who has never been married, does state that fact at least inferentially. Besides, the information charges that they were spoken with the intent to charge her with incest, fornication, adultery and whoredom; and such an intention could not be imputed to the mere use of the words in their application to a married woman living with her husband. The *gravamen* of the offense does not consist in the use of particular words, but in the offense which is imputed to the person of whom the words are spoken. *State v. Fare*, 39 Mo. App. 110, 112; *State v. McDaniel*, 40 Mo. App. 356. The leading rule by which to test the goodness of

indictments and informations is to consider whether they fairly and fully apprise the accused of the charge which he is called upon to meet, and this information is clearly sufficient for that purpose.   He could not be convicted under it without proof of the words charged, or sufficient of them to show the intent on his part to impute to the female named the commission of incest, fornication, whoredom or adultery.   If the female was in fact a married woman, and living with her husband under such circumstances that the words imputed no offense, that would be matter of defense to negative that part of the information which charges the intention with which the words were spoken.

In this respect this information cannot be taken out of the principle which governs the case of *State v. Hynes*, 39 Mo. App. 569.   There the information was under section 1528 of the Revised Statutes of 1879 for disturbing an assembly met for a lawful purpose, to-wit, to bury the body of a dead person, and the only *act* which the information charged was that the defendant did forbid the gate of the cemetery to be opened, held it shut with his hands and refused to allow the assembly to pass into the cemetery.   We held that the introductory words of the information, which charged that the defendant did unlawfully, wilfully, maliciously and contemptuously disturb and disquiet the assembly by doing the act in question, had the effect of characterizing the act as unlawful, and negativing the conclusion that it could be innocent.   In that case I was strongly disposed for a time to hold the indictment bad, but was finally overborne by the opinion of my associates, and drew up the opinion of the court as it is published. The principle of that decision is that, where the act done or the words spoken are capable of being understood either in an innocent or in a criminal sense, effect must be given to the general words of the indictment or information, which charge that it was done or spoken in a criminal sense.

III. The next objection to the information is that it does not individuate the offense, so to speak, by showing whether the words, which it charges the defendant with having spoken, were spoken with the intent to impute to the female named the crime of incest, fornication, adultery *or* whoredom ; and on this point the defendant relies on *State v. Hayward*, 83 Mo. 299. That was an information under section 1542 of the Revised Statutes of 1879, for circulating certain obscene, lewd and licentious pamphlets entitled "The case of C. O. Godfrey ;" and the information was held bad because it did not set out the obscene matter, or enough of it to show that an offense had been committed under the statute. That decision has no application to this case, for here the words spoken are set out.

Nor can we regard the argument a sound one, that the information in this case should be held bad, because it charges that the words were spoken with the intent to impute to the female named the commission of *all* the four offenses of incest, fornication, adultery and whoredom, so that he cannot tell which charge he is called upon to meet. We proceeded upon a similar view in *State v. Bach*, 25 Mo. App. 554, but felt constrained to overrule it in the subsequent case of *State v. Fare*, 39 Mo. App. 110. The words charged in this information are capable of being used in all of the four senses there charged ; and it seems sufficient to make the charge collectively, instead of drawing up the information in four different counts. It is difficult to see how the accused could be taken by surprise, or how his substantial rights could in any way be prejudiced by framing the information in this way.

We, therefore, find no substantial ground, on which we can say that the defendant has been deprived of his legal rights. The punishment assessed by the jury, nine months' imprisonment in the county jail, seems a very severe one for the speaking of slanderous words.

But the record discloses that the accused has been convicted by three juries,—once in the justice's court, where the punishment was assessed at six months in the county jail, and twice in the circuit court, where the punishment was in each case assessed at nine months in the county jail. Although the evidence is not set out in the bill of exceptions, the record contains a hint that, in the use of the words charged in the information, the defendant may have intended to impute to the female named the commission of the crime of incest with her own father. If the punishment is unduly severe, that is a question which addresses itself to the pardoning power.

The judgment will be affirmed. It is so ordered. Judge Biggs concurs. Judge Rombauer concurs in the result.