The State v. Ransberger.

THE STATE v. RANSBERGER, *Appellant.*

DIVISION TWO.

1. **Criminal Practice**: INFORMATION : KNOWLEDGE OF PROSECUTING ATTORNEY : ACT OF 1885. It was not necessary that the prosecuting attorney, in filing an information for a misdemeanor under the act of the legislature of March 31, 1885 ( Laws, p. 145 ), have had actual and personal knowledge of the commission of the offense, as distinguished from knowledge gained by information.

2. ———: ———: ———. It is not imperative on the prosecuting attorney to file an information on the mere filing of a complaint with him by one having knowledge that an offense has been committed, but in such case, as in others, he should have knowledge, that is, be reasonably convinced, not only that an offense has been committed, but that the accused committed it.

106  135
52a 522
52a 670

106  135
55a 335
55a 361
56a 411

106  135
58a 458

106  135
61a 158

106  135
66a 475

106  135
86a 635

106    135
98a ⁴141

106    135
101a ³623

3.    —— : —— : PROSECUTING ATTORNEY. It is not necessary that the prosecuting attorney should swear to an information presented to a justice of the peace, as in presenting it he acts officially under his oath.

4.    —— : —— : ——. It is not essential that the information disclose the source of the prosecuting attorney's knowledge of the offense or its perpetrator. It is sufficient that it states that a certain crime has been committed, and that a certain person committed it.

*Certified from Kansas City Court of Appeals.*

TRANSFERRED TO KANSAS CITY COURT OF APPEALS.

*J. P. Strother* for appellant.

*John M. Wood*, Attorney General, and *A. F. Rector* for the State.

THOMAS, J.—The reasons for the transfer of this case to this court from the Kansas City court of appeals will fully appear by the following excerpts from the very able opinion delivered by Judge ELLISON, on behalf of that court: "This prosecution," says Judge ELLISON, "was begun before a justice of the peace of Saline county by information from the prosecuting attorney charging defendant with lasciviously and lewdly cohabiting with a female therein named. The only objection urged to the information is in relation to the affidavit made by the prosecuting attorney and attached thereto. The affidavit is that the facts stated in the foregoing information are true according to his best information and belief. The specific objection is that the affidavit should have been based upon the knowledge of the prosecuting attorney, and not merely his information or belief.

"The attorney for the state concedes the defendant's point, if the cases of *State v. Humble*, 34 Mo. App. 343, and *State v. Wilkson*, 36 Mo. App. 373, are to be regarded as sound law, but he insists that they should

not be so regarded. * * * The constitution provides that
offenses of the description at bar 'shall be prosecuted
criminally by indictment or information as concurrent
remedies.' Sec. 12, art. 2. The prosecution in this case
is by information. The important question then is,
what is an information? The answer is not what the
legislature may prescribe or designate as an information,
which at the adoption of the constitution was well
known. The information of the common law is the
information prescribed by the constitution, and no
other mode can be authorized by the legislature. This
has been so frequently adjudicated by the supreme
court of the state as not to be debatable or questionable.
*State v. Kelm*, 79 Mo. 515 ; *State v. Briscoe*, 80 Mo. 643 ;
*State v. Russell*, 88 Mo. 649."

Judge ELLISON, after reviewing the law as to the
nature and attributes of an information, and the method
of its presentation to the court, adds : "From these
considerations, it would be clear to the legal mind that
a common-law information is one that is intrusted solely
to the discretion of our state attorney to be given or
withheld at his will, unhampered by statutory restraint,
and, as the case in some respects presents a constitutional
question, it becomes, under our conclusion herein, of
great public importance, that the opinion of the
supreme court should be taken."

The information in this case did not recite that the
prosecuting attorney presented it on his own knowledge,
but, yet, made the charge against defendant in direct,
affirmative language, and the affidavit attached is in the
form indicated by Judge ELLISON. We will add that,
since the decision in this case by the Kansas City court
of appeals, the St. Louis court of appeals has affirmed
the doctrine of *State v. Humble* and *State v. Wilk-
son, supra*, in the case of *State v. Hatfield*, 40 Mo. App.
358, and *State v. Buck*, 43 Mo. App. 443. The doctrine

of these cases is this: An information before a justice of the peace "must be based on *the personal knowledge of some one*, either on that of some private person lodging with the prosecuting attorney a complaint, verified by affidavit and setting forth the facts, or on an information filed by the prosecuting attorney on his own personal knowledge." And this must affirmatively appear either in the body of the information or in the affidavit attached thereto. We have given the subject a very careful consideration, and our conclusion is that the information in this case conforms to the requirements of the statute, and, therefore, the constitutional question suggested does not arise for decision.

I. The act of 1885, under the provisions of which this prosecution was instituted, declares that, "When any person has knowledge that any offense has been committed * * * he may make complaint verified by his oath * * * and deposit it with the prosecuting attorney; and whenever the prosecuting attorney has knowledge of the commission of an offense * * * or shall be informed thereof by complaint deposited with him as aforesaid, it shall be his duty to file an information." Sess. Acts, 1885, p. 145. The contention is that the word "knowledge" as here used means *personal or actual* knowledge as contradistinguished from information derived from others. We do not concur in this contention and from these considerations :

*First.* The words "actual" and "personal" do not occur in the statute, and we have no right to interpolate both or either in our interpretation of the word whose meaning we now seek. Those qualifying adjectives must, therefore, be eliminated from the discussion.

*Second.* "Knowledge" in its ordinary and usual sense has not the restricted meaning contended for by defendant. A discussion of this subject in a philosophical and transcendental sense is not required. The courts, in the administration of law, must look to the

substance of things and not fritter away the rights of men and society by refinements beyond the reach of the common mind and never contemplated by the legislator.

The contention under review assumes that, when a person is informed of a fact, he does not know that fact within the meaning of the law. Mr. Webster defines "know," "to have knowledge; to possess information, instruction or wisdom." "Knowledge," he defines to be "the act of knowing; clear perception of truth and duty; information." Worcester says, "the word knowledge strictly employed implies three things, viz., truth, *proof* and *conviction*." He defines knowledge as "*information*, intelligence; as to have knowledge of a fact." Anderson says, knowledge is information. Knowledge imparted or obtained; knowledge however communicated is information. Bouvier's definition is "knowledge is information of fact." Best in his work on the principles of evidence uses this language: "By knowledge, strictly speaking, is meant an actual perception of the agreement or disagreement of any of our ideas, and it is only to such a perception that the term certainty is properly applicable. Knowledge is intuitive when this agreement or disagreement is perceived immediately by comparison of the ideas themselves; demonstrative, when it is only perceived mediately, *i. e.*, when it is deduced from a comparison of each with intervening ideas which have constant and immutable connection with them, as in the case of mathematical truths, of which the mind has taken in the proof. And, lastly, when through the agency of our senses we obtain a perception of the existence of external objects, our knowledge is said to be sensitive. But knowledge and certainty are constantly used in a secondary sense, which it is important not to overlook, viz., as synonymous with settled belief and reasonable conviction, as when we say that such a one received stolen goods knowing them to have been stolen; or that we are certain or morally certain of the existence of such fact."

Justice STRONG in *Shaw v. Railroad*, 101 U. S. 557, says: "It may fairly be assumed that one, who has reason to believe a fact exists, knows it exists. Certainly, if he be a reasonable being." "Knowledge is information, and information knowledge." *Eddington v. Ins. Co.*, 1 Hem. 1 ; *Robson v. Kemp*, 5 Esp. 53. "Absolute knowledge can be had of but few things." *Story v. Buffum*, 8 Allen, 35. "Knowledge is nothing more than a man's firm belief," says SHAW, C. J., in *Hatch v. Carpenter*, 9 Gray, 271. Sir William Hamilton in his work on logic, page 442, says : "The doctrine, therefore, of the acquisition of knowledge must consist of two parts—the one treating of the acquisition of knowledge through the data of experience, the second of the acquisition of knowledge through the data of intelligence. In regard to the first of these sources, viz., experience—this is either our own experience or the experience of others, and in either case it is a means of knowledge. It is manifest that the knowledge we acquire through our personal experience is far superior in degree to that which we obtain through the experience of other men ; inasmuch as our knowledge of an object in the former case is far clearer and more distinct, far more complete and lively, than in the latter. On the other hand the latter is far superior to our proper experience in this,—that it is much more comprehensive, and that, without this, man would be deprived of those branches of knowledge which are to him of the most indispensable importance."

Thus in the domain of literature, of law, of philosophy, we find a *consensus* of opinion that information is knowledge and that what we know is not confined to what we have personally observed or to what we have evolved by our own cognitive faculties. These definitions accord, too, with the common understanding of men in the ordinary affairs of life. We speak of historical knowledge, scientific knowledge, geographical knowledge, legal knowledge. A telegram announces

that a president has been assassinated, and the people of
the nation are instantly thrilled with horror and indig-
nation.   They do not *know* that the president has been
assassinated in the strict sense, but they are firmly con-
vinced of it, and they know it in a practical sense
so that action follows spontaneously.   And so with the
social and business imtercourse of the people ; action is
taken habitually on information alone, and if it was not
the commerce of the world would stop.   Take from men
the knowledge they obtain from others, and how little
would be left.

*Third.*   The construction we place on this word is
supported by the context.   We know an argument in
support of defendant's contention is drawn from the
use of two words in the statute.   " Whenever the
prosecuting attorney has *knowledge* of the commission
of an offense or is *informed* thereof by affidavit, it
shall be his duty to file an information."   It is claimed
that the use of the word "knowledge" in one con-
nection and "informed" in another indicates that the
legislature did not intend to use the two words in the
same sense.   If we understand the argument correctly
it is that when a prosecuting attorney is informed of the
commission of an offense by the affidavit of a third
person he has not knowledge of the commission of the
offense within the meaning of that word as used in the
statute.   It is not stated, but it is tacitly assumed, in this
argument that the prosecuting attorney has no discretion,
but is compelled and required to proceed by filing an
information if a person having knowledge of an offense
makes and deposits an affidavit.   This is fallacy.   It is
settled law in Missouri, that no one can be put upon his
final trial, either for a misdemeanor or felony, until he
is informed of the nature and cause of the accusation
by the state through some of its constituted agencies.
In case of misdemeanors two methods are provided by
law for preferring this accusation, one by indictment,

the other by information. And an information under our constitution can be preferred by the state's prosecuting officer alone, and in no case by a private citizen.

Therefore, when the prosecuting attorney files an information it is always official; it is his accusation; and for it he is responsible. But, if a private person can, by making the required affidavit, *compel* a prosecuting attorney to file an information, it would be illogical and unjust as well, to hold that it is the information of the prosecuting attorney for which he is responsible. And, besides that, a private person could in that event, in fact, though not in form, present an information, and thus accomplish by indirection that which he could not accomplish directly. It is true the statute provides that, when the prosecuting attorney is informed of the commission of an offense by the affidavit of another, it shall be his duty to file an information. But this language ought not to be so construed as to give the prosecuting attorney no discretion in the premises; such construction would nullify the constitutional provision requiring criminal charges to be preferred by grand juries or sworn officers who stand indifferent between accused parties and the state and would subject the citizen to harassment by a criminal prosecution having no higher basis than the malice of his enemy. If the affidavit of the other person fails to firmly convince the prosecuting attorney, fails to give him knowledge that an offense has been committed, he can legally and properly refuse to proceed; indeed, his highest duty would require that he refuse to proceed. The prosecuting attorney ought to have enough information in regard to the commission of the offense before he institutes the prosecution to cause him to believe that an offense has been committed, and that a certain person committed it. The knowledge the statute requires of him may be acquired in various ways; he may have personal knowledge of some of the facts and information from others as to other facts or

information from others as to all the facts.    All that is required is that he shall, in his official capacity, be reasonably satisfied that the due administration of the law requires him to proceed by information.    And, if an affidavit does not give him knowledge to this extent, he is not "*informed*" of the commission of an offense within the meaning of the statute.

We will now consider how the context corroborates the position we have assumed.    The language is: "Whenever the prosecuting attorney has knowledge of the commission of an offense," etc.    Now, if knowledge is used here in the restricted sense, no one could swear that he *knows* that an *offense* has been committed.    He may see certain conduct, and be able to swear that he knows what the conduct is, and still be unwilling and unable to swear that an *offense* has been committed.    It takes several elements to constitute a crime and ordinarily it takes a judicial investigation to determine whether all of those elements are present or not.    In the nature of things, no one can *know*, in the strict sense, that a crime has been committed, in a large majority of cases, and it may be safely affirmed in all. Indeed, judicial administration proceeds upon information almost wholly.    In early times the witnesses of a transaction were the jurors who passed on it; but now we deem it unsafe for the court to permit anyone who knows *a fact* in connection with the transaction that is likely to bias him to enter the jury box.    He then must decide upon information, and his verdicts are based solely on belief.    The court instructs the jury, "if you believe from the evidence you will find," etc.    The finding is based on belief.    The jury is not required to return "we know."    Hence, if a prosecuting attorney is required to *know* that an offense has been committed before filing an information, more would be required of him in formulating and preferring a charge to put a person on his defense than is required of the juror on the final trial.    This would not only be

unjust but absurd also. The prosecuting attorney and final trier act on information, only differing in the methods of obtaining information. The prosecuting attorney must be reasonably convinced; the final trier beyond a reasonable doubt.

The second argument drawn from the context is the provision of the statute allowing a party to be arrested and taken before the magistrate on the oath "of a person *competent to testify against the accused*," but requiring an information to be filed before the accused is put upon trial. As a basis for an official information the affidavit of "a person having knowledge that an offense has been committed" is sufficient, but, when a party is to be arrested without an official charge, the affidavit of "a person competent to testify against the accused" is requisite. In the latter case he must *know some fact* at least, tending to prove the crime before a party can be even temporarily deprived of his liberty on his sole affidavit. It seems clear to us that the statute makes a distinction between a person having knowledge of an offense, and a person competent to testify against the accused.

*Fourth.* If "knowledge" is here used in its strict sense, prosecutions by information would be impracticable. The prosecuting attorney could not know even *one* fact, much less *all* the facts in ninety-nine cases out of a hundred. Two courses in that event would be open to him. He would have to become a spy, detective and informer, or else let the statutes defining misdemeanors become a dead letter. The former course could not be tolerated for a moment, and the latter ought not to be.

*Fifth.* But if "knowledge" is used in its strict sense, how much knowledge must the prosecuting attorney have before he would be authorized to proceed? Must he know *all* the facts necessary to be proved in order to convict, or may he acquire some by his personal experience and some from information of others? The

statute provides that he shall have knowledge of the *commission of the offense.* It is silent as to the perpetrator, and it was urged in the oral argument before this court, that all the prosecuting attorney was required to *know* was that an *offense* had been committed; that he was not required to *know* who committed it, leaving us to infer, at least by implication, that he must know the crime was committed but might be *informed* as to the perpetrator. This argument falls as far short of the meaning of the statute as the former goes beyond it. The prosecuting attorney must have knowledge of the perpetrator of the crime, and of the crime itself, before he is authorized to file an information, and this knowledge may be obtained by the usual methods in nonjudicial investigations, but it must exist to the extent that he is enabled to proceed under the sanction of his oath to make a direct, affirmative charge against the accused.

*Sixth.* If the prosecuting attorney must have actual knowledge of the commission of an offense before he can file an information, he would necessarily be a competent witness, and we would thus inaugurate the practice of the same person preferring the charge as an officer and then going on the witness stand to prove it. This is another practice that would and could not be tolerated for a moment. Experience proves that the less actual knowledge of an offense the prosecuting attorney has, the more he is disposed to be impartial, and stand indifferent between the accused and the state, and the more he personally knows about the crime, the more he is disposed to inject into the prosecution his personality, his feelings and his spite.

II.  It is not necessary that the prosecuting attorney should swear to an information presented to a justice of the peace. In presenting it he acts officially under his oath of office. *State v. Wilkson, supra; State v. Buck, supra; State v. Parker,* 39 Mo. App. 116.

VOL. 106—10

III.     Nor is it necessary that the prosecuting attorney should disclose the source of his knowledge of the crime, or its perpetrator, either in the body of the information or by affidavit.  The information must contain all the essential averments to notify the accused of the nature and cause of the accusation.   In other words he must affirm that a certain crime has been committed, and that a certain person committed it, and this is all that is required.

The result reached by us is, that, no constitutional question being involved, the cause will be re-transferred to the Kansas City court of appeals for determination. All of this division concur.